IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-4430

DAVID ULERY,
on behalf of himself and all others similarly situated,

Plaintiff,

v.

REPUBLICAN PARTY OF FLORIDA,
a Florida-registered Party Executive Committee,

Defendants.

---

**CLASS ACTION COMPLAINT AND JURY DEMAND**

---

## INTRODUCTION

1. The Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

2. The Republican Party of Florida ("RPOF") has violated the TCPA by calling David Ulery ("Ulery"), and thousands of others like him, with prerecorded calls, without consent.

3. To stop RPOF's illegal calls, Ulery brings this putative class action.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a significant portion of the facts giving rise to this lawsuit and the wrongful conduct occurred in this District.

6. This Court has personal jurisdiction over RPOF because the calls at issue arose from RPOF´s conduct in Colorado. Ulery´s phone number starts with 719, which is a Colorado area code. Based on his area code, RPOF knew that Ulery was located, or likely located, in Colorado and would receive calls in Colorado. Furthermore, because Ulery has never provided his phone number to RPOF or any related political parties, on information and belief, RPOF obtained Ulery´s phone number through some type of data broker and therefore not only learned of Ulery's phone number but also that he lives in Colorado. Thus, RPOF purposefully directed its phone call activities into Colorado.

**PARTIES**

7. David Ulery is a resident of Colorado Springs, Colorado. He has lived in Colorado for the last two decades.

8. Republican Party of Florida is a Florida-registered Party Executive Committee with its headquarters at 420 E. Jefferson Street, Tallahassee, Florida 32301.

**FACTUAL ALLEGATIONS**

9. Ulery has been the subscriber and sole user of the cellular number 719-271-7000 for the last two decades.

10. On September 3, 2026, at 3:33 PM UTC, RPOF called 719-271-7000 from 850-669-6710.

11. RPOF played a prerecorded message that said they were doing a survey.

12. The call was clearly prerecorded for two reasons:

13. First, it sounded recorded, and there was not a live person to talk to.

14. Second, on the same day that Ulery received this call, at least one other consumer also received a call from 850-669-6710. A recording of that call is published online by NoMoRobo. *850-669-6710*, NOMOROBO, https://www.nomorobo.com/lookup/18506696710 (last visited Sept. 11, 2026). In that recording, the messages says press 1 to start the survey, or press 9 to be added to the do not call list. Telling a consumer to press 1 or 9 is not something a live person does but are clear indicators the call was prerecorded and used an IVR.

15. The caller id for 850-669-6710 shows the name "RPOF" which is the acronym that Defendant uses.

16. When calling back the number 850-669-6710, a prerecorded message plays that says: "Thank you for calling the Republican Party of Florida."

17. Ulery has no relationship with RPOF, never provided his phone number to RPOF, and never gave permission for RPOF to send him any type of communication.

18. Ulery has never voted in Florida nor been registered to vote in Florida.

19. RPOF's call to Ulery did not have an emergency purpose.

20. RPOF's prerecorded call was a nuisance and annoyance to Ulery. The call invaded his privacy and his phone.

21. On information and belief, RPOF obtained Ulery's phone number from a third party.

22. On information and belief, RPOF obtained Ulery's phone number from a data broker.

23. It appears RPOF's calls were merely a pretext to solicit donations. That is the only logical explanation for why RPOF—a political party from Florida—would "survey" someone who lives in Colorado yet has never voted in Florida nor had any dealings with RPOF. This practice is

known in the survey-research industry as "frugging," or fundraising under the guise of research. *See* Am. Ass'n for Pub. Op. Rsch., Condemned Survey Practices, https://aapor.org/standards-and-ethics/condemned-survey-practices (last visited Sept. 14, 2026) (explaining that soliciting monetary contributions as part of a purported research process "amounts to fundraising under the guise of research (frugging)").

**LEGAL STANDARD**

24. The TCPA prohibits calls to cell phones using "an artificial or prerecorded voice" without the "prior express consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

25. The TCPA's prohibition on prerecorded calls applies equally to political organizations. Indeed, the Supreme Court has already considered a First Amendment challenge brought by political organizations seeking the right to make political robocalls to cell phones. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 613–14, 617 (2020). Seven Justices concluded that the underlying robocall restriction should remain in force, and the Court explained that, "[a]s a result, plaintiffs still may not make political robocalls to cell phones." *Id.* at 614. The plurality further explained that "[a] generally applicable robocall restriction would be permissible under the First Amendment." *Id.* at 633 (plurality opinion).

26. There is no exception for prerecorded survey calls to cell phones. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 825–26 (N.D. Ill. 2016) (holding that prerecorded calls to cellular telephones violated § 227(b)(1)(A)(iii) "irrespective of whether the calls were . . . made for a political or non-commercial purpose"); *Perrong v. Victory Phones LLC*, 519 F. Supp. 3d 193, 198 (E.D. Pa. 2021) (rejecting a political polling company's claimed exemption because the FCC's noncommercial-call exemption "is applicable only if the number in question is a residential number—rather than a cell phone").

## CLASS ACTION ALLEGATIONS

27. Pursuant to Federal Rule of Civil Procedure 23(b)(3), Ulery brings this action on behalf of all other persons similarly situated throughout the United States.

28. Ulery proposes the following class:

> **The Prerecorded Voice Class**
> All persons in the United States (1) whom RPOF called, or caused to be called, on their cellular telephone number, (2) using an artificial or prerecorded voice, (3) four years from the filing of this action through the date of class certification.

29. The precise scope of the proposed class may depend on facts developed through discovery. *See Hudson v. HomeAdvisor, Inc.*, 348 F.R.D. 690, 693 (D. Colo. 2025) (declining to strike a TCPA class that potentially included persons who consented because any resulting overbreadth was "more appropriate for resolution at the certification stage than on the pleadings" and could "likely be cured at a later time"); *Cleary v. Whole Foods Mkt. Rocky Mountain/Southwest L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *2 (D. Colo. Dec. 5, 2016) (explaining that prediscovery motions to strike class allegations are "generally disfavored" and that, "[i]n most circumstances," discovery should precede a determination of class certification). Plaintiff therefore reserves the right to refine or narrow the proposed class definition based on facts developed through discovery.

30. The class likely exceeds 10,000 members.

31. As a result, joinder is impracticable.

32. On information and belief, RPOF made, or caused to be made, more than one million calls involving the same survey as the call to Ulery.

33. Questions of law and fact common to the class include whether RPOF initiated the calls, whether the calls used a prerecorded or artificial voice, whether the calls were to cellular telephones, and whether RPOF had consent to initiate the calls.

34. Ulery's claims are typical of the class because they arise out of the same conduct by RPOF (prerecorded calls) and are based on the same legal theory under the TCPA (prerecorded calls without consent).

35. Ulery is an adequate representative because his interests do not conflict with the class, and he will fairly represent the interest of the class. Plaintiff's counsel also has no conflict and is experienced in TCPA class actions.

36. The questions common to the class predominate over individualized questions.

37. A class is superior to individual suits because it saves judicial resources, promotes consistency and efficiency, provides a forum for small claimants, and deters illegal activities. Class members prosecuting separate actions is unlikely because of the time and expense required. Damages are statutory and straightforward. Notice can be provided by mail or other means. There is no difficulty in managing this case as a class.

**FIRST CAUSE OF ACTION**
**Illegal Use of a Prerecorded or Artificial Voice**
**(On Behalf of Ulery and the Prerecorded Voice Class)**

38. RPOF violated 47 U.S.C. § 227(b)(1)(A)(iii) by making, or causing to be made, calls that used a prerecorded or artificial voice without prior express consent and without an emergency purpose when calling Ulery and members of the Prerecorded Voice Class.

39. Ulery and members of the Prerecorded Voice Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

40. The court should treble damages for knowing and willful violations. *Id.*

## RELIEF REQUESTED

Ulery respectfully requests the Court grant the following relief:

A. Certification of the proposed class;

B. Appointment of Ulery as class representative;

C. Appointment of The HQ Firm, P.C. as lead counsel for the class;

D. An award of damages to Ulery and class members, as allowed by law;

E. An award of fees, costs, and interest, as allowed by law; and

F. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Ulery requests a jury trial as to all claims so triable.

## ESI PRESERVATION DEMAND

Ulery demands that RPOF preserve all electronically stored information (ESI) involving all outbound and inbound calls, to or from Defendant, including call logs and recordings, four years of the filing of this action to the present. If ESI is held by vendors, platforms, or third parties, Defendant must ensure it is preserved or retrieve it before it is routinely deleted. Under Rule 37(e), failing to take reasonable steps to preserve ESI may result in sanctions if this data is lost.

DATED September 15, 2026

Respectfully submitted,

*/s/ James Wertheim*

James Wertheim
The HQ Firm, P.C.
7533 S. Center View Ct. #4424
West Jordan, UT 84084
(385) 440-4121
Jim@thehqfirm.com

*Attorney for Plaintiff David Ulery*